FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

SEP 17 2008

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LESLIE SMITH, | 3:07-cv-00278-BES-RAM |
| Plaintiff, | **ORDER** |
| v. | |
| KELLY CLARK, an individual, STATE OF NEVADA, ex rel. its DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, DIVISION OF WILDLIFE, | |
| Defendants. | |

Currently before this Court is a Motion for Summary Judgment (#13) filed on February 25, 2008, by Defendants Kelly Clark and State of Nevada, ex rel. its Department of Conservation and Natural Resources, Division of Wildlife (collectively referred to herein as "Defendants"). Plaintiff Leslie Smith filed an Opposition to Motion for Summary Judgment (#14) on April 2, 2008, and Defendants filed a Reply (#21) on May 5, 2008.

**I. BACKGROUND**

This case involves a claim of gender discrimination and violation of First Amendment rights. Plaintiff Leslie Smith ("Smith") was employed by the Division of Wildlife from January 21, 1992 to June 14, 2006. (Motion for Summary Judgment (#13) at p. 2). Defendant Kelly Clark ("Clark") was Smith's supervisor from February 4, 2002 to June 14, 2006. Id. While employed with the Department of Wildlife, Smith was also the executive director of an independent nonprofit organization called Outdoor Recreation Education Organization ("OREO"). Id. at Exhibit I. According to Smith, "OREO was an outside private foundation that promoted public participation in hunting and fishing programs." (Opposition to Motion for

Summary Judgment (#14) at p. 1). Because OREO was an outside endeavor, on January 21, 2006, Clark sent Smith an email instructing him that he was not to spend State time and resources on OREO projects. (Motion for Summary Judgment (#13) at Exhibit H). In her email, Clark stated that "[a]lthough I support the idea of OREO, it is a separate volunteer organization, and you need to keep that in mind." Id. Further, she stated: "You should not be doing any OREO work on state time or using state equipment to develop OREO materials. You need to keep your voluntary work with OREO completely separate from your job duties at the state." Id. In response, Smith sent an email to various people stating that "any efforts for and on behalf of OREO will be completely voluntary and we may not use state time, staff, equipment and resources." Id.

Several months later, Clark found numerous items relating to OREO in Smith's work area at the Department of Wildlife. Id. at p. 3. "The items included letters, faxes, mailing labels, an invoice for the OREO website, and a grant application for OREO." Id. On the cover of the grant application for OREO was a Department of Wildlife logo. Id. Smith did not have permission to use the Department of Wildlife logo on this application. Id. at p. 4. On May 19, 2006, Defendants had the Department of Information Technology, Office of Information Security investigate Smith's work computer. Id. According to the investigation, there were numerous OREO files on Smith's computer. Id.

On May 30, 2006, Clark recommended that Smith be terminated from his position at the Department of Wildlife. Id. at Exhibit K. According to the Specificity of Charges, Smith had violated several provisions of NAC 284.650. Specifically, it stated that Smith (i) was insubordinate and willfully disobedient because he went against direct orders not to conduct OREO business on state time, (ii) was dishonest about revealing his involvement with OREO, (iii) showed inexcusable neglect of duty by using state equipment and state time to conduct his personal business, and (iv) [had] misrepresented his official capacity or authority and caused discredit to the agency by using the Department of Wildlife logo on a grant application for OREO without supervisor permission. Id. The proposed effective date for Smith's termination was June 14, 2006. Id. On June 13, 2006, the Director of the Department of

Wildlife concurred with Smith's termination recommendation. Id. Smith filed a formal appeal of his termination, but the State Personnel Commission Hearing Officer upheld the termination. Id. at Exhibit K and Exhibit Q.

On July 28, 2006, Smith filed a charge of discrimination with the Nevada Equal Rights Commission ("NERC"). Id. at Exhibit M. Specifically, Smith alleged that he was discriminated against based on gender. Id. After reviewing the evidence, NERC issued a letter closing the charge because "the evidence presented did not meet the legal criteria for establishing that discriminatory acts occurred." Id. at Exhibit N. On December 21, 2007, in an answer to an interrogatory, Smith stated that he was withdrawing his discrimination claim. Id. at Exhibit R. Defendants have now filed a motion seeking summary judgment on Smith's First Amendment claim.

## II. ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998).

Any dispute regarding a material issue of fact must be genuine—the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the

evidence is reasonably susceptible; it may not resort to speculation." British Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978). The evidence must be significantly probative, and cannot be merely colorable. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Defendants argue that they are entitled to summary judgment on Smith's First Amendment claim because Smith was terminated for "egregious insubordination and willful disobedience" after he was "illegally expending State time and resources on a volunteer organization that [had] no relationship to his work." (Motion for Summary Judgment (#13) at p. 7). According to the Defendants, "[t]he First Amendment does not protect employees from illegally using their workplace as a contact point to develop nonprofit organizations that have no relationship to the workplace." Id. at p. 8. Further, Defendants state that Smith "was not contributing to a civic discourse, but rather attempting to work on a private nonprofit organization unrelated to state government while on the clock and being paid with public funds." Id. at p. 10.

In response, Smith concedes that "OREO was an outside private foundation;" however, he states that his "theory of the case" is that the Defendants terminated him "for his associational activity (at work and outside of work) under pretext of insubordination." (Opposition to Motion for Summary Judgment (#14) at p. 1). In addition, Smith argues that his "speech and association was as a citizen and not as an employee." Id. In this regard, Smith argues that his "foundational activity, even if in part at work, was not a job duty." Id. at p. 2. As such, because it was not a job duty, Plaintiff states that he was fired "for activity that was not job related," and that activity is "thus protected by the First Amendment." Id.

In order to state a claim against a government employer for violation of the First Amendment, an employee must show: "(1) The employee engaged in constitutionally protected speech, (2) the employer took adverse employment action against the employee, and (3) the employee's speech was a 'substantial or motivating' factor in the adverse action." Freitag v. Ayers, 468 F.3d 528, 543 (9th Cir. 2006)(citing Coszalter v. City of Salem, 320 F.3d

4

968, 973 (9th Cir. 2003)). In Garcetti v. Ceballos, the United States Supreme Court discussed the elements necessary to show constitutionally protected speech by a public employee. 547 U.S. 410 (2006). In Garcetti, the Supreme Court stated that "[t]he court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Id. at 417.

According to the Supreme Court, "two inquiries guide interpretation of the constitutional protections accorded to public employee speech." Id. at 418. "The first [inquiry] requires determining whether the employee spoke as a citizen on a matter of public concern." Id. If the answer to that inquiry is no, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Id. (citing Connick v. Myers, 461 U.S. 138, 147 (1983)). If, on the other hand, the answer is yes, "then the possibility of a First Amendment claim arises." Id. In that case, "the question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Id. (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." Id. As such, it is clear that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." Id. "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." Id. (citing Connick, 461 U.S. at 143). However, "at the same time, the Court has recognized that a citizen who works for the government is nonetheless a citizen." Id. "The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict  incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." Id. As such, the Court has held that "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Id.

1  In this case, Smith argues that he was engaging in protected speech when he
2  performed services for OREO while he was at work at the Department of Wildlife. According
3  to Smith, because the services for OREO were not part of his job duties at the Department of
4  Wildlife, he was acting as a citizen because OREO was not part of his employment. This
5  Court finds Smith's argument without merit.

6  A government entity has the discretion to restrict speech provided it has an "adequate
7  justification for treating the employee differently from any other member of the general public."
8  Garcetti, 547 U.S. at 418. However, "the restrictions it imposes must be directed at speech
9  that has some potential to affect the entity's operations." Id. The Supreme Court has
10 recognized that government employers need "sufficient discretion to manage their operations."
11 Id. at 422. Thus, "[e]mployers have heightened interests in controlling speech made by an
12 employee in his or her professional capacity." Id. As a result, although "employees retain the
13 prospect of constitutional protection for their contributions to civic discourse," that protection
14 "does not invest them with a right to perform their jobs however they see fit." Id.

15 In this matter, Smith was terminated for working on his nonprofit organization while on
16 the job at the Department of Wildlife. Prior to his termination, Smith was specifically told that
17 he "should not be doing any OREO work on state time or using state equipment." (Motion for
18 Summary Judgment (#13) at Exhibit H). However, Smith disregarded that order and continued
19 to work on OREO while on the job at the Department of Wildlife. Regardless of whether
20 Smith's activities on OREO were a matter of public concern, they clearly had the potential to
21 affect the Department of Wildlife's operations because he engaged in such activity without
22 supervisory support and in direct contravention to his supervisor's orders.[1] As noted in the
23 foregoing, government employers have a right to assert a certain degree of control over their
24 employees' words and actions in order to secure the efficient provision of public services. By
25 working on a non-job related project while at work, Smith was negating this control and
26 impacting the efficient provision of public services. Moreover, although Smith argues that his
27 "theory of the case" is that his termination for insubordination was a pretext, he provides no
28

---

[1] NAC 284.650 specifically provides that an employee may be subject to disciplinary action for conduct such as "[i]nsubordination or willful disobedience." NAC 284.650(6).

6

evidence to support this theory. Without any factual support for his theory, Smith cannot defeat a motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#13) is GRANTED.

Dated this 17th day of September, 2008.

_____
United States District Judge